**REMAND / JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-7436-GW-JCx | Date | November 8, 2021 |
|---|---|---|---|
| Title | *Lizabeth Gralnik v. DXC Technology, Inc.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Debra A. Lauzon | Amberly A. Morgan | |

**PROCEEDINGS:** TELEPHONIC HEARING ON PLAINTIFF'S MOTION FOR REMAND [11]

Court hears oral argument. The Court's Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court GRANTS the Motion for Remand.

| | : | 15 |
|---|---|---|
| | Initials of Preparer | JG |

*Lizabeth Gralnik v. DXC Technology, Inc.*; Case No. 2:21-cv-07436-GW-(JCx)
Tentative Ruling on Plaintiff's Motion to Remand

I. **Background**

Plaintiff Lizabeth Gralnik brought this gender discrimination, retaliation, and unequal pay action against Defendants DXC Technology, Inc. and its Executive Vice President and Chief Human Resources Officer, Mary Finch, in September 2021 in Los Angeles County Superior Court.  *See* Notice of Removal ("Removal") ¶ 1, ECF No. 1.  Before the Court is Plaintiff Gralnik's motion to remand the action back to state court.  *See* Plaintiff's Motion for Remand ("Mot"), ECF No. 11.  Defendants have provided an Opposition ("Opp."), ECF No. 16, and Plaintiff has submitted a Reply, ECF No. 17.

A. Factual Background

Gralnik is a 62-year-old female employee of Defendant DXC that had been a top performor at DXC, exceeding her annual sales plans.  *See* Complaint ("Compl.") ¶¶ 1-10, ECF No. 1-1.  In 2017, Plaintiff filed a whistleblower complaint against a Sales Manager at DXC.  *Id.* ¶ 11.  Prior to making the formal complaint, Plaintiff had complained to the Sales Manager's boss, Kristine Gersabeck, detailing compliance violations as well as discrimination, bullying, and retaliation.  *Id.* ¶ 12.  No investigation followed the formal complaint and the Sales Manager's conduct became more aggressive and egregious.  In 2018, the Sales Manager was replaced by Shawn Willoughby, who likewise engaged in unfair/illegal sales practices, discrimination, deceit, ethics violations, and bullying.  *Id.* ¶ 14.  After another employee filed a complaint against Willoughby, Plaintiff was interviewed during the investigation and provided truthful information that put DXC's sales bookings at risk of an audit.  *Id.* ¶¶ 15-16.  Gersabeck supported Willoughby in the matter, and both employees retaliated against Plaintiff by removing her name from sales deals and giving them to male colleagues.  *Id.* ¶¶ 17-18.  As a result of Gersabeck and Willoughby's removal of Plaintiff's name from the opportunity line in the sales system, Plaintiff was not paid the commissions that she had earned and her performance metrics were negatively impacted, leading to lower commissions.  *Id.* ¶ 19.  In March 2019, Willoughby retaliated against Plaintiff by giving her a lower performance rating then was warranted.  *Id.* ¶ 20.  Plaintiff complained to Willoughby, providing documentation that she deserved a higher rating.  *Id.* ¶ 21.  Willoughby agreed but never took steps to correct the rating before resigning.  Plaintiff requested that Gersabeck change the rating, and Plaintiff was ignored.  *Id.* ¶ 22.

1

Plaintiff was approved to transfer to another group at DXC in March 2019, but Gersabeck allegedly prevented Plaintiff's transfer until August 2019, resulting in a loss of income of at least $425,000.  *Id.* ¶¶ 24-25.  Gersabeck forced Plaintiff to transfer all of her accounts, with a value of $35,000,000, in April/May 2019 to other men in her group before leaving.  Plaintiff thus was not given credit for any of her deals and was paid no commissions on sales, even though she was the procuring cause.  *Id.* ¶ 28.  Gersabeck further refused to pro-rate Plaintiff's elevated quota, resulting in a lower attainment percentage and lower commissions.  *Id.* ¶¶ 30-32.  Plaintiff filed a complaint to Human Resources ("H.R.") about the retaliation.  *Id.* ¶ 33.

In 2019, Plaintiff applied for a leadership role in the Automotive area under a male named Ajay Kumar, who had been hired for the position over Plaintiff who had more experience.  *Id.* ¶ 34.  Plaintiff was more than qualified but did not even receive an interview.  *Id.* ¶ 35.  The position was not posted internally, as required by DXC's policies, and the position was given to a male with less experience who had been with Defendant for only a few months.  The leadership role promised more visibility and opportunity as well as a salary increase to $500,000.  Plaintiff's salary was $200,000, which was significantly less than male counterparts.  *Id.* ¶ 38.  Gersabeck continued her retaliation in December 2019, by instructing Plaintiff's new manager to remove her from a deal and replace her with a male colleague, who ultimately lost the deal.  *Id.* ¶ 39.

H.R. completed their investigation in May 2020 and informed Plaintiff that the matter was being dismissed with a finding that no company policies were violated.  *Id.* ¶ 40.  Plaintiff was offered $2,116 to "move forward" but believes that the sum was not actually paid to her.  Plaintiff alleges that H.R. did not interview key witnesses during its investigation, and H.R. refused to provide her more information.  *Id.* ¶¶ 41-42.  Plaintiff's manager told her to take the matter to Executive Vice President and Chief Human Resources Officer, Mary Finch.  Plaintiff did so formally in July 2020 but never received a response.  *Id.* ¶ 43.

B. Procedural Background

Plaintiff Gralink filed her Complaint in Los Angeles County Superior Court on September 10, 2021.  The Complaint alleges eleven causes of action: (1) gender discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940; (2) unequal pay in violation of Cal. Labor Code § 1197.5; (3) unlawful retaliation in violation of FEHA, Cal. Gov't Code § 12940; (4) unlawful retaliation in violation of Cal. Labor

Code § 1102.5; (5) failure to pay wages in violation of Cal. Labor Code § 203; (6) failure to reimburse expenses in violation of Cal. Labor Code § 2802; (7) unlawful forfeiture in violation of Cal. Labor Code § 223; (8) unlawful clawback in violation of Cal. Labor Code § 221; (9) failure to pay overtime wages in violation of Cal. Labor Code § 1194; (10) unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code §§ 17200 *et seq.*; and (11) failure to provide accurate wage statements in violation of Cal. Labor Code § 226. *See* Compl. ¶¶ 45-111.

Plaintiff is a citizen of California, Defendant DXC is a citizen of Nevada and Virginia, and Defendant Finch is a citizen of California. *See* Removal ¶¶ 8-14. Defendant DXC removed the action to this Court despite the apparent lack of complete diversity because Finch had not yet been properly served and she was allegedly fraudulently joined. *See id.* ¶¶ 14-29. After Plaintiff moved to remand, Defendant DXC moved to dismiss several causes of action for failure to state a claim. *See* Defendant DXC's Motion to Dismiss, ECF No. 17. Plaintiff then filed a First Amended Complaint ("FAC"), ECF No. 19, and the parties stipulated to vacating the pending motion to dismiss, *see* ECF No. 22.

## II.   Legal Standard

Federal courts operate under the presumption that they do not have jurisdiction over state-law causes of action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "The defendant bears the burden of establishing that removal is proper" and removal statutes are "strictly construed against removal jurisdiction." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *see also Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992) ("[J]urisdiction must be rejected if there is any doubt as to the right of removal.").

Subject-matter jurisdiction exists over claims that: (1) are between citizens of different states, and (2) have an amount in controversy greater than $75,000. *See* 28 U.S.C. § 1332(a). The forum defendant rule states that an action otherwise removable on the basis of diversity jurisdiction "may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Although diversity jurisdiction usually requires complete diversity of citizenship, that requirement is relaxed "where a non-diverse defendant has been fraudulently joined." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009).

Joinder can be fraudulent in one of two ways. First, there can be "actual fraud in the

pleading of jurisdictional facts." *Grancare, LLC v. Thrower*, 889 F.3d 543, 548-49 (9th Cir. 2018). Second, it can be fraudulent "if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Hunter*, 582 F.3d at 1043 (quoting *Hamilton Materials*, *Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007)). Conversely, "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Id*. at 1044.

The burden of proving a fraudulent joinder is a heavy one because the removing defendant must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against it in state court. *See GranCare,* 889 F.3d at 548 ("A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against [finding] fraudulent joinder.'"

### III.   Discussion

Plaintiff and Defendant Finch are both citizens of California, which should make removal on the basis of diversity jurisdiction improper. Defendant Finch, however, was never properly served and Defendants assert that the plain language of 28 U.S.C. § 1441(b)(2) only bars removal if the Defendant who is a citizen of the State in which the action was brought was properly joined and served. *See* Opp. at 21-23. There is no dispute that Defendant Finch had not been properly served at the time of removal and has yet to be served. *See* Opp. at 9; Reply at 17. Moreover, Defendants assert that even if the forum defendant rule applied, diversity jurisdiction exists because Defendant Finch was fraudulent joined in order to defeat complete diversity. *See* Opp. at 12-21.

As a threshold issue, both parties briefed the existence of a circuit split regarding the applicability of the forum defendant rule in instances of "snap removal," or removal before Plaintiff has an opportunity to serve. *See* Mot. 5-7; Opp. at 21-23. This Court thoroughly discussed the issue recently in *Choi v. Gen. Motors LLC*, No. 21-CV-05925-GW-(MRWx), 2021 WL 4133735, at *2-*3 (C.D. Cal. Sept. 9, 2021) and held that the plain language of Section 1441(b)(2) should control. The plain language unequivocally states that an action may not be removed only if a forum defendant has been "properly joined and served." There is no dispute that Finch has yet to be served, and Plaintiff has not offered any novel arguments that would

4

cause the Court to deviate from its reasoning in *Choi*. Accordingly, in line with the Court's previous decision in *Choi*, the Court will not remand the action on account of a Defendant's "snap removal" before Finch was able to be served.

The Court notes, however, that the situation in *Choi* was distinguishable because there was no issue concerning the existence of complete diversity. The forum defendant rule was applicable in *Choi* because several defendant dealerships were California citizens, but diversity was never an issue because the *Choi* plaintiffs were all citizens of Colorado. *Choi,* 2021 WL 4133735, at *5. In the present situation, while the Court finds that the "snap removal" must be allowed based on the plain language of Section 1441(b)(2), the Court still has a duty to ensure that it maintains subject-matter jurisdiction over the matter. And the Court is deprived of subject-matter jurisdiction in the absence of complete diversity among the parties. Thus, even if removal is allowed under Section 1441(b)(2) because Finch was not served, a Court "cannot ignore a defendant's citizenship simply because the defendant has not been served." *Chavez v. Schlumberger Tech. Corp.*, No. 21-CV-04817-MWF-(MARx), 2021 WL 3403741, at *3 (C.D. Cal. Aug. 4, 2021) (citing *Shaw v. Nike Retail Servs., Inc.*, No. 21-CV-04322-SB-(MRWx), 2021 WL 2920612, at *2 (C.D. Cal. July 9, 2021)). The remand inquiry thus turns on whether Finch was fraudulently joined, as alleged.

Turning to the issue of fraudulent joinder, the Court notes that Defendant DXC carries a heavy burden in demonstrating fraudulent joinder because DXC must prove that there is absolutely no possibility that the Plaintiff will be able to establish a cause of action against Finch. *See GranCare,* 889 F.3d at 548. Defendant Finch was individually named on the fifth cause of action for failure to pay wages in violation of Cal. Labor Code § 203; the sixth cause of action for failure to reimburse expenses in violation of Cal. Labor Code § 2802; the ninth cause of action for failure to pay overtime wages in violation of Cal. Labor Code § 1194; and the eleventh cause of action for failure to provide accurate wage statements in violation of Cal. Labor Code § 226. The Complaint asserts that Finch is personally liable for some of the wage and hour violations under Cal. Labor Code § 558.1. Compl. ¶ 3. Finch is not heavily implicated in the Complaint, but Plaintiff alleges that management told her to take her issues to Finch, who was the Executive Vice President and Chief Human Resources Officer. Compl. ¶ 43. Plaintiff formally did so in July 2020, but she alleges that she never got a response from Finch. *Id.*

Section 558.1(a) provides: "Any employer or other person acting on behalf of an

5

employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation." Section 558.1(b) provides that "[f]or purposes of this section, the term 'other person acting on behalf of employer' is limited to a natural person who is an owner, director, officer, or managing agent of the employer, and the term "managing agent" has the same meaning as in subdivision (b) of Section 3294 of the Civil Code." In order for Defendant DXC to prevent remand, it must prove that there is absolutely no possibility that Plaintiff will be able to establish a cause of action against Finch for causing the failure to reimburse expenses in violation of Cal. Labor Code § 2802, the failure to pay overtime wages in violation of Cal. Labor Code § 1194, or the failure to provide accurate wage statements in violation of Cal. Labor Code § 226.[1]

       Defendant DXC supports removal by submitting three declarations that all assert that Finch had little individual involvement, oversight, direction, or involvement setting policy for the groups at DXC that Plaintiff worked for. *See generally* Declaration of Maureen Summers in Support of Notice of Removal ("Summers Decl."), ECF No. 2; Declaration of Susan Young in Support of Notice of Removal ("Young Decl."), ECF No. 2; Declaration of Connie Bocchieri in Support of Notice of Removal ("Bocchieri Decl."), ECF No. 2. A declaration from an Employee Relations Specialist from DXC who is familiar with DXC's corporate structure and job duties of H.R. employees asserts that Finch did not "oversee or particiate in, oversee, or direct the decisions, policy development, or administration of the American Sales Operation group or the Global Sales Compensation group" at DXC. Summers Decl. ¶¶ 2, 9. The declaration also asserts that Finch only began her position as Executive Vice President and Chief Human Resources Officer on October 1, 2019, after many of the events in the Complaint had already transpired, and that Finch had no personal involvement in approving payments made to Gralnik. *Id.* ¶¶ 6, 10. A declaration from a Senior Manager, Global Sales Compensation at DXC who is familiar with DXC's policies, procedures, and practices for employee sales incentive compensation confirms that Finch did not oversee, control, or direct the operations and decisions of the American Sales Operations and Global Sales Compensation group, and did not supervise

---

[1] Defendant DXC notes that the fifth cause of action for failure to pay wages does not apply to current employees like Plaintiff, *see* Opp. at 16-17, and Plaintiff has failed to respond to that argument in her Reply. The Court thus finds that Plaintiff would be unable to state a claim against Finch under the fifth cause of action.

or set any policies related to sales compensation plans. Young Decl. ¶¶ 2, 6-8. And a third declaration from a Director, Global Corporate Services at DXC who is familiar with DXC's policies for expense reimbursement confirms that Finch did not personally develop or administer the expense reimbursement policy and was not consulted regarding the payment of expense reimbursements to Plaintiff. *See* Bocchieri Decl. ¶¶ 2, 6-8.[2]

The Court, however, finds that Defendant has not met its heavy burden. DXC must show that there is absolutely no possibility that the Plaintiff would be able to establish a cause of action against Finch in order to succeed on an argument for fraudulent joinder. This entails establishing that Plaintiff would be unable to state an individual claim against Finch under Section 558.1(b), and such failure would be "obvious according to the settled rules of the state." *See Hunter*, 582 F.3d at 1043. It appears, however, that the rules determining applicability of Section 558.1 individually to an "owner, director, officer, or managing agent" like Finch are far from settled. A recent decision by a California court found that "[n]o [California] Court of Appeal has addressed under what circumstances an 'owner, director, officer, or managing agent' of an employer may be held liable under section 558.1," and noted that the federal courts within the Ninth Circuit offered "some limited guidance on the issue." *Usher v. White*, 64 Cal. App. 5th 883, 895 (2021). The court in *Usher* independently concluded that the appropriate test for liability under Section 558.1 was that the individual had to "have been personally involved in the purported violation of one or more of the enumerated provisions; or, absent such personal involvement, *had sufficient participation in the activities of the employer, including, for example, over those responsible for the alleged wage and hour violations, such that the [individual] may be deemed to have contributed to, and thus for purposes of this statute, 'cause[d]' a violation.*" *Id.* at 896 (emphasis added). The *Usher* court held that determining individual liability under Section 558.1 "cannot be determined by any bright line rule" and "requires an examination of the particular facts in light of the conduct." *Id.*

Even if the Court assumes the law surrounding the application of Section 558.1 were well settled, applying the test from *Usher*, the three declarations provided by Defendants do not

---

[2] Plaintiff argues that the three supplied declarations are "untrustworthy" because none of the three declarations are from Defendant Finch herself. *See* Reply at 6-7. The Court disagrees and sees no reason why a declaration from Finch is required or why the lack of a declaration from Finch is an indication of untrustworthiness. Plaintiff distinguishes *McCabe v. General Foods, Inc.,* 811 F.2d 1336, 139 (9th Cir. 1987) by asserting that declarations in *McCabe* were made by named defendants, but *McCabe* does not contain any such language suggesting that the declarations are more trustworthy when they come from named Defendants.

establish that it would be impossible for Plaintiff to allege a cause of action against Finch. While the declarations submit that Finch was not personally involved in decisions regarding operations, compensation policy, or expense reimbursement, there is, for example, little information on how much authority Finch had in managing those responsible for the alleged wage and hour violations. The declarations also provide little information on other key events that could have helped "cause" the alleged violations. The declarations do not at all touch on what occurred when Plaintiff formally reached out to Finch regarding her issues and what role Finch played in the allegedly ineffective H.R. investigation. If, for example, Plaintiff included issues about the failure to pay overtime wages or pay expense reimbursements or provide accurate wage statements in her complaint to H.R. but the resulting investigation did not properly resolve her issues, it is not obvious to the Court that Finch could never be individually liable.[3]

Defendant DXC also proffers an argument that Plaintiff cannot state a claim against Finch because Cal. Labor Code § 2802 requires the employer to indemnify the employee for conduct arising out of employment. *See* Opp. at 15-16. The Court disagrees. Plaintiff offers no authority for the proposition that the citizenship of a defendant (who will be indemnified for a judgment under Cal. Labor Code § 2802) is not considered when determining diversity. As Defendant DXC bears the burden of establishing that removal is proper and removal statutes are strictly construed against removal jurisdiction, the Court finds that Defendant has not met its burden.

In its Opposition, DXC requests that it be permitted to conduct limited discovery and provide additional briefing on the factual issues before the Court issues its ruling. *See* Opp. at 25. That request is denied. As observed in *Rotella v. Emeritus Corp.*, No. C 10–03202-SI, 2010 WL 5141857, *5 n.1 (N.D. Cal. 2010):

> Defendant Emeritus requests permission to conduct limited discovery regarding jurisdiction if the Court is inclined to grant plaintiff's motion to remand. Defendant does not explain why, or cite any case that would support the idea that, the Court would have jurisdiction to do this if it does not have jurisdiction over the case. The request is denied. *See Caudill v. Ford Motor Co.*, 271 F.Supp.2d 1324, 1328 (N.D.Okla. 2003) (suggesting that a party should have "taken discovery in state court to show fraudulent joinder" (emphasis added)). *Cf.* 28

---

[3] The Court notes that in the filed First Amended Complaint, the Plaintiff appears to include such allegations. *See* FAC ¶ 45 ("Despite the fact that Plaintiff made Finch aware of the retaliation Plaintiff was facing, including the unlawful withholding of earned wages, and including other labor code violations as alleged herein, Finch failed to remedy, as was her duty to do and therefore jointly liable.")

U.S.C. § 1446 (calculating timing requirement of removal from the date "it may first be ascertained that the case is one which is or has become removable").

## IV. Conclusion

For the foregoing reasons, the Court would **GRANT** the motion for remand.